## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ALICE KOVALCHIK**                            *
                                                             *
**v.**                                                    *          **Civil No. JKS-09-2045**
                                                             *
**MICHAEL J. ASTRUE**                        *
**Commissioner of Social Security**       *
                                                             *

### MEMORANDUM OPINION

Plaintiff Alice Kovalchik brought this action pursuant to 42 U.S.C. § 405(g) for review of a final administrative decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 41 U.S.C. §§ 401–433 (the Act). Both parties' motions for summary judgment and Kovalchik's alternative motion for remand are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Kovalchik's motion for remand will be granted, and the Commissioner's motion for summary judgment will be denied.

1. **Background.**

Kovalchik protectively applied for DIB benefits on July 10, 2006, alleging onset of her disability on April 24, 2006. (R. 11). Her application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on April 30, 2008, at which Kovalchik was represented by counsel. On August 2, 2008, the ALJ found that Kovalchik was not disabled within the meaning of the Act, (R. 20), and on June 8, 2009, the Appeals Council denied her request for review. (R. 1). Thus, the ALJ's determination became the Commissioner's final decision.

2.  **ALJ's Decision.**

The ALJ evaluated Kovalchik's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520.  First, the ALJ determined that Kovalchik has not engaged in substantial gainful activity since her alleged onset date.  (R. 13).  At step two, the ALJ concluded that Kovalchik suffers from degenerative disc disease of the lumbar spine, which qualifies as a severe impairment.  (R. 13).  At step three, the ALJ determined that Kovalchik does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R.15).  At step four, the ALJ found that Kovalchik has the Residual Functional Capacity (RFC) to perform work with light exertional activity, but that she requires a sit or stand option with limited general public contact, (R. 16), and is unable to perform any past relevant work.  (R. 18).  At step five, the ALJ found, based on testimony from a vocational expert (VE), that jobs exist in significant numbers in the national economy that the claimant can perform.  (R. 18).  As a result, the ALJ determined that Kovalchik was not disabled within the meaning of the Act.  (R. 20).

3.  **Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to

justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990).  This court cannot try the case *de novo* or resolve evidentiary

conflicts, but rather must affirm a decision when it is supported by substantial evidence. *Id.*

**4.  Discussion.**

Kovalchik makes two allegations of error.  First, she claims that the ALJ erroneously

assessed her subjective complaints.  Second, Kovalchik argues that the ALJ erroneously assessed

her RFC.  This court agrees with both allegations.

A.  The ALJ Improperly Analyzed Kovalchik's Subjective Complaints.

Kovalchik claims that the ALJ applied an improper standard in evaluating her assertions

regarding the intensity, persistence, and limiting effects of her pain and other symptoms by

requiring that they be supported by objective findings.  She also claims that the ALJ

mischaracterized the evidence in determining that she was not credible.

When evaluating whether a person is disabled by subjective symptoms, an ALJ must

follow a two-step process. *Craig v. Charter*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §

404.1529.  First, the ALJ must determine that objective evidence shows the existence of a

medical impairment that could reasonably be expected to produce the actual symptoms alleged.

20 C.F.R. § 404.1529(b).  If the claimant makes this threshold showing, the ALJ must evaluate

the extent to which these symptoms limit the claimant's capacity to work.  20 C.F.R. §

404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including

medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. §

404.1529(c).  The ALJ must also assess the credibility of the claimant's statements, as symptoms

can sometimes manifest at a greater level of severity of impairment than is shown solely by

objective medical evidence.  SSR 96-7p.  To assess credibility, the ALJ should consider factors

such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* The ALJ's opinion should be given great weight upon review because he has had the opportunity to observe the demeanor and determine the credibility of the claimant. *Shivley*, 739 F.2d at 989–90.

In the instant case, the ALJ found that although Kovalchik's medically determinable impairments satisfied the aforementioned threshold inquiry, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (R. 17). While the ALJ was correct in finding that Kovalchik satisfied this threshold inquiry, his conclusion that she and her subjective complaints of pain were not credible is not supported by substantial evidence.

The ALJ improperly refused to credit the totality of opinions from all of Kovalchik's treating physicians, which objectively supported her subjective pain complaints. The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician was a specialist." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)). Two of Kovalchik's treating physicians, Drs. Shoba Matthews and Norman Koval, explicitly stated, in September 2006 and October 2006 respectively, that Kovalchik was "totally and permanently disabled" and was "unable to work" because of her degenerative disc disease. (R. 279, 280). Another treating physician, Dr. Allan Weinstock, also stated that Kovalchik was "extremely limited in the work that she [could] do." (R. 252). Moreover, all three physicians had significant treatment relationships with Kovalchik, as Dr. Matthews was

Kovalchik's main physician (R. 154), and both Drs. Weinstock and Koval had treated Kovalchik

since 2005, beginning shortly after the domestic violence incident that eventually brought about

the onset of her severe back pain symptoms.  (R. 181).

The ALJ also improperly refused to credit the consistency of opinions across physicians

within the record.  All of Kovalchik's treating physicians reported chronic back pain and either

diagnosed her themselves or agreed with the diagnosis of referring physicians indicating that

Kovalchik had degenerative disc disease of the lumbar spine in the L3-4 and L5 region.  All of

the physician reports were the result of objective medical testing, and were consistent with

Kovalchik's testimony during the administrative law hearing.  (R. 40–46).

Instead, despite the consistent determinations of permanent disability by Kovalchik's

long-time treating physicians, as well as the consistency of opinions from all of Kovalchik's

physicians regarding chronic back pain, the ALJ cited only the opinion of a single physician, Dr.

Paul Griffith, III, in concluding that "the objective evidence does not support the degree of pain

[Kovalchik] alleged."  (R. 17).  Specifically, the ALJ only referred to three of Dr. Griffith's

reports.  In the July 2006 report, Dr. Griffith stated that Kovalchik "had a dramatic improvement

in function and reduction in back pain symptoms" after being fitted with a lumbosacral brace in

June 2006.  (R. 268, 269).  However, that same report also states that Kovalchik's pain

medications were still being adjusted to provide additional relief, that she was still out of work,

and that she would begin physical therapy only when her pain symptoms were better controlled.

(R. 268).  In his November 2006 report, Dr. Griffith stated that Kovalchik had "a dramatic

reduction in bilateral radicular pain symptoms" after her first lumbar epidural block, and, in the

same sentence, that Kovalchik was "beginning to get some recurrent symptoms" and needed to

be scheduled for a second round of treatment. (R. 303).  Finally, in December 2006, after

Kovalchik's third and final round of lumbar epidural block treatments, Dr. Griffith stated that Kovalchik was "able to stand without much difficulty" and that she exhibited a normal gait. (R. 302). However, contrary to the ALJ's characterization that the lumbar epidural block treatments dramatically improved Kovalchik's back pain, (R. 17), Dr. Griffith explicitly stated that each epidural block gave Kovalchik "temporal relief of symptoms, but it does not last" and that Kovalchik continued to complain of back pain that radiated from her back down to her lower thighs despite these treatments. (R. 302). Moreover, the ALJ failed to discuss thirteen physician reports prepared by Dr. Matthews, ranging from December 2006 to April 2008, all of which indicated that Kovalchik continued to suffer from chronic back pain. (R. 21–33). These reports were also consistent with Kovalchik's testimony and Dr. Matthews' earlier opinion that Kovalchik was totally and permanently disabled. (R. 21–33).

Second, in assessing Kovalchik's credibility, the only apparent inconsistency that the ALJ cited was Kovalchik's description of her daily activities, which the ALJ found were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. 17). When assessing a claimant's credibility, the ALJ must consider several factors in addition to objective medical evidence including, but not limited to: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. 404.1529(c).

In the instant case, as indications of Kovalchik's lack of credibility, the ALJ cited only Kovalchik's daily activities and the temporary pain reduction afforded by the lumbosacral brace and the lumbar epidural blocks.  (R. 17).  Moreover, the pain reduction that the ALJ cited in Dr. Griffith's report was over two years old and failed to take into account the evidence of continued and worsening pain in subsequent 2007 and 2008 physician reports.  (R. 21-33).  As a result, the ALJ improperly assessed Kovalchik's subjective complaints.

B.  The ALJ Improperly Assessed Kovalchik's RFC.

Kovalchik first contends that the ALJ failed to provide a function-by-function analysis of her ability to perform the physical and mental demands of work.  Specifically, Kovalchik claims that the ALJ failed to set forth a function-by function assessment of her ability to perform the exertional and non-exertional requirements of light work, failed to set forth a narrative discussion describing how the evidence supported each conclusion, failed to cite specific medical facts and non-medical evidence which supported the RFC assessment, failed to discuss her ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, failed to describe the maximum amount of work-related activity that she could perform based on the evidence available in the case record, and failed to explain how any material inconsistencies or ambiguities in the evidence in the case were considered and resolved.

RFC is the most work an individual can do for 8 hours a day, 5 days a week, despite that individual's determinable impairment and any related symptoms, such as pain.  20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); SSR 96-8p, 1996 SSR Lexis 5, at *5.  The ALJ must make the RFC determination after considering all of the relevant medical and non-medical evidence in the record.  20 C.F.R. §§ 416.920(e) and 416.945.  The Social Security Regulations provide the following guidelines outlining the way in which an ALJ should determine a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(b) and 416.945(b). When determining an individual's RFC, the ALJ must perform a function-by-function assessment based upon the claimant's functional limitations and ability to do work-related activities. SSR 96-8p, at *3. The ALJ must address both the exertional and non-exertional capacities of the individual. SSR 96-8p, 1996 SSR Lexis 5, at *15. In order to do work at a given exertional level, the individual must be able to perform substantially all of the exertional and non-exertional functions required of work at that level. SSR 96-8p, 1996 SSR Lexis 5, at *9. The ALJ's evaluation must also include a narrative discussion describing how medical facts and non-medical evidence support the ALJ's conclusion. *Fleming v. Barnhart*, 284 F. Supp 2d 256, 271 (D. Md. 2003); SSR 96-8p, 1996 SSR Lexis 5, at *19.

In the instant case, the ALJ failed to perform a function-by-function analysis of Kovalchik's ability to perform substantially all of the exertional and non-exertional demands of light work. The ALJ merely made the general finding that Kovalchik was able to perform light work with a sit or stand option and limited public contact, without setting forth a sufficient narrative discussion citing the evidence he used to reach his conclusion about Kovalchik's RFC. Although the ALJ stated that Kovalchik's daily activities were inconsistent with her complaints of disabling pain, (R. 17), this conclusion is, as noted, inconsistent with the substantial evidence in the record, particularly the reports of Kovalchik's treating physicians.

Finally, Kovalchik claims that the ALJ failed to evaluate pertinent evidence in assessing

her RFC because the ALJ only reviewed evidence from the period between April 2006 and

December 18, 2006 rather than reviewing the entire record.  Once again, in assessing a

claimant's RFC, the ALJ must consider all of the relevant medical and non-medical evidence in

the record.  20 C.F.R. §§ 416.920(e) and 416.945.  Here, the ALJ considered the reports of

treating physicians only up until December 18, 2006, ignoring thirteen additional reports from

December 2006 until April 2008.  (R. 21-33).  In addition, the ALJ cited only Dr. Griffith's

opinion and Kovalchik's daily activities as the basis of his finding that she was able to perform

light work with a sit/stand option.  However, the substantial evidence on the record is

inconsistent with this finding.

**5.  <u>Conclusion.</u>**

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied,

and Kocalchik's motion for remand will be granted.


Date:  September 8, 2011                                    _____/S/_____

                                                                          JILLYN K. SCHULZE
                                                                          United States Magistrate Judge